ANDRÉS QUINTANA REYES, Plaintiff and Appellant, v. THE CAPITAL OF PUERTO RICO, Defendant and Appellee.

No. 6970. Argued February 7, 1936.—Decided March 5, 1937.

*Andrés Quintana Reyes* in his own behalf. *Juan Valdejulli Rodríguez* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

██ Fundamentally and essentially this case involves the construction of section 1362 of the Civil Code (1930 ed.) as follows:

"If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possesion thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith."

The Municipality of San Juan bought two pieces of property from Mr. and Mrs. Luis de la Cruz, one of them in 1925 and the other in 1926. The two pieces of property are to be considered as a unity. On this land in 1927, the municipality constructed a school building known as Dr. Francisco Hernández School, and since that year the building has been steadily used for educational purposes.

For some reason difficult to understand, when the municipality first acquired the property it failed to record the conveyances in the registry of property. It was only on September 27 of 1933 that the municipality attempted to obtain a record. The registry was denied on the ground that the title to the same property appeared in the name of Andrés Quintana Reyes.

For the moment we need not follow all the steps by which Andrés Quintana Reyes secured this record in the registry of property. His predecessor in title, Cipriano Manrique Gil, was a judgment creditor of Luis de la Cruz and as such successful creditor executed his judgment on the property in controversy.

There was some question in the court below as to whether the debtor Luis de la Cruz did not pay the claim that Cipriano

Manrique Gil had against him. We shall assume with the lower court that except for the claims of the municipality, Cipriano Manrique Gil obtained a good title. In any of the proceedings wherein Manrique Gil acquired title, Andrés Quintana Reyes was a special agent. There were other attempts, in the suit that followed, to attack the *bona fides* of the title of Quintana Reyes.

The municipality took possession of this property when it built thereon, and still continues to hold and possess it. On the 18th of May 1933, Andrés Quintana Reyes brought a suit in revendication against the Capital of Puerto Rico or the City of San Juan. The defendant filed a counterclaim on various grounds and asked that the title in the name of Quintana Reyes be canceled and the property recorded in the name of the municipality. Judgment was rendered on June 30, 1934, dismissing the complaint, holding the cross complaint to be good, and hence annulling the records made in the registry.

The court in its opinion found or held as the case may be: (*a*) that Quintana Reyes has been a resident of San Juan since 1912; (*b*) that the lot has had a large school building standing on it since 1926 and that municipal ordinances were passed authorizing, first, the purchase of the land and then, the erection of the building thereon; (*c*) that Luis de la Cruz testified that he told Quintana four or five times that the land was not his and that he had sold it to the city and that he also informed Manrique of this fact in Quintana's presence. It transpires that Manrique Gil in his suit against Luis de la Cruz obtained an attachment to secure the effectiveness of his judgment and the communication from De la Cruz to Manrique Gil and Quintana Reyes took place before the attachment.

There were other unimportant considerations in the court's opinion and it is also a fact that Quintana has never paid any taxes on the property. The court said that there

was other evidence tending to show notice to Manrique Gil and Quintana Reyes.

Laying aside the other reasonings of the district court, whereon its judgment was based and as to which there exists a difference of opinion among the members of this court who attended the hearing of the appeal, there is one—that of the knowledge on the part of Manrique and Quintana—which leads us unanimously to the affirmance of the judgment appealed from.

We shall, however, assume for the moment, without discussion of details, that Manrique Gil and Quintana Reyes knew that Luis de la Cruz had sold the property to the municipality and that they obtained their several titles with full knowledge and notice of the claims of the municipality.

The exact definition of a third person has been the bone of contention by commentators of the Mortgage Law ever since that great piece of legislation came into existence.

Galindo and Escosura in their treatise on the Mortgage Law, vol. 2, pp. 305, 306, 307, support the view that the person who buys land from one who, according to the state of the registry has a right to sell, receives a title which once recorded is indefeasible except by the immediate vendor, regardless of the amount of knowledge that the purchaser had of a prior outstanding unrecorded sale to another. They include the notary and the witnesses to the first deed of sale as third persons who may later buy from the seller and by recording, defeat the first purchaser. La Serna was the most important propounder of the opposite view. Barrachina, in his treatise on the Mortgage Law (*Derecho Hipotecario y Notarial,* Vol. I, p. 231 *et seq.*), ably supports the opposite view and that of the Supreme Court of Spain to the effect that even under the Mortgage Law one must give due regard to the question of good or bad faith and that one who buys with knowledge of a prior outstanding sale and title in another cannot defeat him by getting a deed and recording before

that other. We agree to a large extent with what he says, as follows (page 239):

"Moscoso maintains that the Mortgage Law completely dispenses with the question of good or bad faith; but does not this statute likewise belong to the Civil Law? Does not the Code provide in its section 433 that any person is considered a possessor in good faith who has no knowledge that in his title or mode of acquisition there exists any defect which might invalidate the same? For that witness who has bought from whom he knew was not the owner for the very reason that he took part in the execution of the original deed of alienation, was aware that his title was defective and acquired in a wrongful manner. If when the deed in his favor was executed he did not remember his intervention he could have informed himself by such means as he had at hand; this, supposing he wanted to proceed in good faith; which does not exclude the possibility that there might be cases where the witness knows what he later pretends to be ignorant of. In order that there should not be such differences, the law, providently, does not grant the immunity of a third person to any one who may have intervened in the act or contract nor to those who were present thereat and whose senses were impressed thereby."

and again at page 246:

"The law does not only preclude from the status of a third person the notary and witnesses, given the natural interpretation of section 27, but it also comprehends all those who, whether or not they intervened, have knowledge of the cause of nullity; those who being aware of the fact that one is not the owner of the property because he has already disposed of it, nevertheless, purchase it from him; for he is purchaser in bad faith for the reason that he knew that in his title or mode of acquisition there existed a defect which invalidated the same (section 433 of the Code); this and no other is the feeling expressed by the jurisprudence of the Supreme Court which we have cited in this same chapter.

"The law would avoid any defect whatsoever in the title of the person seeking to record; it demands from him at the outset, purity of title; of course, since, in the absence of proof to the contrary, good faith is always presumed (Judgment of the 5th of June 1894) any one pretending to invalidate the title of the purchaser relying on the ground that the latter knew of the prior sale, must justify

that knowledge overcoming that presumption *juris tantum,* a requirement which would not be necessary if the person seeking to record the double sale should have intervened officially in the first of such sales as notary or witness."

*Blanco* v. *Hernández,* 18 P.R.R. 686, supports the conclusion immediately foregoing.

The appellant relies on the case of *Escalera* v. *West India Oil Company,* 43 P.R.R. 551. But that case does not support his contention once it has been proved that the appellant had knowledge of the rights of the municipality and was not therefore a *bona fide* third person, a condition which accompanied the West India Oil Company in the case which Cristina Escalera Falú brought against it. See what in this regard is contained in the opinion of this court rendered by Mr. Justice Aldrey. It is as follows:

"The appellee maintains that the appellant is not a *bona fide* third person because from the fact which it admitted as evidence and which we have copied it is evident that upon purchasing, it had knowledge of the prior acquisition by Cristina Escalera Falú, but the above transcribed fact admits of no such interpretation but the contrary one to the effect that until it was notified the defendant did not have knowledge of the purchase made by the appellee nor that she claimed to be the owner. Therefore, since the appellant bought while ignorant of the prior sale to the appellee and without there being any record thereof in the registry it is a purchaser in good faith, without it being able to be said, as did the lower court, that it (the appellant) was not a *bona fide* third person because it had or should have had knowledge of the fact that the lot did not belong to its debtor when the appellant acquired it, since there is nothing to show that it had such knowledge, nor that it should have had it inasmuch as it was ignorant of that sale, as to which the registry of property likewise failed to give it notice. The case of *Blanco* v. *Hernández,* 18 P.R.R. 686, cited by the appellee, does not support the judgment appealed from for that case relies on the theory that the person therein sued was not a third person in good faith because he knew before purchasing that the tenancy in common in controversy had been sold, a thing which does not occur in the present case."

■ We come then to the question of whether the notice to Quintana Reyes was sufficiently shown. The appellant insists that Luis de la Cruz was unworthy of belief for various reasons and particularly because he denied that he had at any time caused the judicial sale to be suspended when the actual fact was otherwise. This may have been a lack of memory or a failure on the part of the attorney to make his client realize what was happening, or is susceptible of other explanations. Even, however, if Luis de la Cruz was not telling the truth with respect to these suspensions, we can not hold that the maxim of *falsus in uno, falsus in omnibus* should be applied. The court still has the right to believe a part of the testimony of the witness and evidently did. We have considered the application of this maxim in the case of *People* v. *Ortiz,* 45 P.R.R. 810.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.